Karen **LIVADAS**, Plaintiff,

v.

**Lloyd W. AUBRY, Jr., in his official capacity as Labor Commissioner of California, Defendant.**

**No. C 90 0468 TEH.**

United States District Court, N.D. California.

Oct. 12, 1990.

Richard G. McCracken, Michael T. Anderson, Davis Cowell & Bowe, San Francisco, Cal., for plaintiff.

H. Thomas Cadell, Jr., Dept. of Industrial Relations, State of Cal., San Francisco, Cal., for defendant.

## MEMORANDUM OPINION
## AND ORDER

THELTON E. HENDERSON, District Judge.

This matter comes before the Court on the plaintiff's motion for summary judgement and the defendant's countermotion

for summary judgement. The plaintiff moves for summary judgement on the ground that the defendant's policy, denying enforcement of certain provisions of the California Labor Code to Plaintiff on the basis of her coverage under a collective-bargaining agreement with an arbitration clause, constitutes state action which infringes upon her federal rights under the National Labor Relations Act (NLRA), in violation of 42 U.S.C. § 1983. The plaintiff alleges that the policy denies her certain valuable benefits, which are granted to all employees except those whose employment is governed by a collective bargaining agreement containing an arbitration clause, and that the policy discourages collective bargaining, which is a federal right granted to all employees in the NLRA.

The defendant, in a countermotion for summary judgement, alleges that, rather than interfering with the plaintiff's rights under federal law, the state's policy actually encourages collective bargaining and arbitration, and that furthermore, federal preemption doctrine prevents the defendant from providing the contested benefits to the plaintiff.

The parties' motions for summary judgement came on for hearing on September 24, 1990 at 10:00 a.m., the Honorable Thelton E. Henderson presiding. The plaintiff was represented by Davis, Cowell, & Bowe and Michael T. Anderson. The defendant was represented by H. Thomas Cadell, Jr., Chief Counsel, Division of Labor Standards Enforcement. The Court would like to thank the parties, and especially Mr. Anderson, for their excellent work in briefing the very difficult issues presented in these motions. After careful consideration of the parties' written and oral arguments, it appears to the satisfaction of the Court therefrom that the plaintiff's motion for summary judgement should be GRANTED and that the defendant's motion for summary judgement should be DENIED.

BACKGROUND

The plaintiff, Karen Livadas, is a member of United Food and Commercial Workers, Local 373, AFL–CIO ("Local 373"). Ms. Livadas worked at Safeway Stores ("Safeway") in Napa County, California until January 2, 1990, when she was notified through her union that she had been terminated from the job. Ms. Livadas alleges that on the day she was terminated she requested all pay due her. The store manager informed Ms. Livadas that Safeway would mail her a check. Safeway did not pay the plaintiff until January 5, 1990. Ms. Livadas alleges that this delay in payment violated California Labor Code § 201, which requires employers to remit unpaid wages to discharged employees immediately upon termination. Labor Code § 203 provides penalties for employer non-compliance with § 201.

On January 3, 1990, Ms. Livadas called the Napa office of the California Division of Labor Standard Enforcement (DLSE) to file a claim regarding the outstanding wages. The plaintiff allegedly spoke to two officers who told her that the DLSE could not process her claim. On January 8, 1990, the plaintiff went in person to the DLSE's Napa office. Once again, the officer on duty refused to process her claim and told Ms. Livadas that she must process her claim through her union, and that if her union refused to handle her wage claim, she should contact the National Labor Relations Board (NLRB).

Karen Livadas filed a complaint against the defendant, Lloyd Aubry, Jr., in his official capacity as Labor Commissioner for the State of California, seeking injunctive and declaratory relief and damages flowing from an alleged agency policy of discrimination in the enforcement of the California Wage and Hour Law against employees who work under collective bargaining agreements which have arbitration clauses. The parties agree that the defendant provides certain valuable protections and benefits to all California employees except those who work under collective bargaining agreements (CBA's) containing arbitration clauses. The plaintiff alleges that the defendant's policy denied her access to the investigatory, prosecutorial, and remedial resources provided under California Labor Code sections 79 through 104 for the sole reason that she is an employee with a CBA containing an arbitration clause. The plaintiff alleges that DLSE's denial of benefits interferes with her federal rights un-

der the NLRA, and therefore violates 42 U.S.C. § 1983.

Both of the parties agree that the policy of the DLSE is to enforce Labor Code §§ 201 and 203 for all employees except for those whose work is governed by CBA's containing binding arbitration clauses. Ms. Livadas argues that on this basis alone, the Court can resolve her motion for summary judgement in her favor.

The plaintiff alleges that her participation in a labor union and in collective bargaining constitute federally protected rights, and that the defendant's denial to the plaintiff of benefits under California law on the basis of her exercise of her federally created rights violates 42 U.S.C. § 1983. The plaintiff argues that the NLRA establishes a system under which employers and employees are each provided with economic weapons which they may use against each other. One of the rights granted to employees is the right to bargain collectively. The state's denial to employees working under a CBA with an arbitration clause of the valuable benefit at issue upsets the balance of power established by the NLRA. The plaintiff argues that the provision of such a valuable state benefit cannot be conditioned upon the employees relinquishment of the federally created right of collective bargaining.

In his answer, the defendant affirmatively alleges, among other defenses, that the terms of the plaintiff's employment at Safeway were governed by a CBA which contains a mandatory and binding arbitration clause, and that the DLSE properly investigated and dismissed the plaintiff's claim on the grounds that federal labor law preemption doctrine precludes the Commissioner from interpreting or applying the terms of the CBA to determine damages allegedly due to the plaintiff. The DLSE argues that federal preemption doctrine makes the interpretation of CBA's a matter for the labor arbitrator and the NLRB. Since damages under § 203 are determined in terms of wages, which are established by the CBA, the defendant argues that enforcement of the statute would entail interpretation of the CBA, which is preempted. The defendant claims that the plaintiff should have the dispute resolved through the grievance arbitration scheme established by the CBA. The defendant claims that this policy actually encourages labor arbitration.

The plaintiff claims that the policy discourages collective bargaining and arbitration because it denies to employees working under a CBA containing an arbitration clause the benefit of state enforcement procedures, which are granted to all other employees. A union employee may not vindicate the right at issue in this case through arbitration because the arbitrator is allowed to enforce only those rights which stem from the CBA. Since the right at issue in this case stems from state law, rather than from the CBA, the arbitrator can not enforce it. The result is that union employees are forced to bargain for a valuable benefit which all other employees receive automatically. Also, since the right to payment of wages upon termination and for penalties for non-compliance stems from state law rather than from the CBA, enforcement of the law does not require interpretation of the CBA, and so is not subject to federal preemption doctrine.

PROCEDURAL POSTURE

The precise questions at issue here have previously been before the Court. In its May 15, 1990 Order, this Court cancelled oral argument and denied both parties' motions for summary judgement on the ground that there were genuine disputes as to material facts in the case. In its June 27, 1990 Order, the Court granted the plaintiff's motion for reconsideration of the Court's May 15, 1990 Order on the ground that the defendant's basis for disputing certain facts which the Court held to be at issue in its earlier Order, were not sufficient to create genuine issues for trial under Fed.R.Civ.P. 56(e); were questions of law rather than of fact; or were immaterial to the resolution of the case. In its August 24, 1990 Order, the Court *sua sponte* again rescheduled hearing to allow the parties to address the threshold issue of whether the NLRA creates a private right in this instance actionable by the plaintiff under 42 U.S.C. § 1983.

In its May 2, 1990 Order, the Court denied the defendants motion under Fed.R. Civ.P. 19 to compel joinder of plaintiff's employer, Safeway Stores, and her union, Local 373 of the United Food and Commercial Workers, as necessary parties.

*Legal Standard for Summary Judgement*

Summary judgement is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgement as a matter of law. *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* To oppose a motion for summary judgement on the ground that there is a genuine issue of material fact in dispute a party, " . . . may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

DISCUSSION

*Private Right of Action*

■ The threshold issue is whether the NLRA right at issue in this case is actionable under 42 U.S.C. § 1983. We hold that it is. In *Golden State Transit Corp. v. City of Los Angeles, (Golden State II),* —— U.S. ——, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), the Supreme Court held that the NLRA gives employees and employers a private right, enforceable under 42 U.S.C. § 1983, to engage in free collective bargaining without penalty or restraint by the State.

*Golden State Transit Corp. v. City of Los Angeles, (Golden State I),* 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986) and *Golden State II* involved the labor negotiations of the Golden State Transit Corp., a taxicab company. At the time that Golden State's operating franchise license expired, and was subject to a renewal decision by the City of Los Angeles, Golden State was in the midst of a strike by its workers. The City refused to renew Golden State's operating license so long as the company remained in a labor dispute with its workers.

Golden State sued the City for an injunction and damages under § 1983. In *Golden State I*, the Supreme Court held that the City's action penalized Golden State for the exercise of rights granted under the NLRA. The Court held that the NLRA gave employers the right to withstand the demands of striking workers, just as it gave workers the right to strike. The City's action imposed a penalty, or additional burden on the cab company for the exercise of its NLRA right, thereby upsetting the power balance between labor and management established in the NLRA. On remand, the district court enjoined the city to reinstate the franchise, but held that the NLRA did not create a private right of action under § 1983. The Ninth Circuit affirmed.

In *Golden State II*, the Supreme Court expressly held that the NLRA granted the cab company rights enforceable under § 1983. The Court's analysis begins with the language of § 1983 which provides for a federal remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," which, the Court notes, "plainly indicates [that] the remedy encompasses violations of federal statutory as well as constitutional rights." *Golden State II*, 110 S.Ct. at 448. The Court followed with the two-step analysis of *Middlesex County Sewerage Authority v. National Sea Clammers Assn., (Sea Clammers)*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

The first step of the *Middlesex* test requires the Court to determine "whether the provision in question creates obligations binding on the governmental unit or rather 'does no more than express a congressional preference for certain kinds of treatment.' " *Golden State II*, 110 S.Ct. at 448 (citations omitted). The Court also must determine whether "the provision in question was 'inten[ded] to benefit' the putative

plaintiff." Id. (citations omitted). On this issue, the *Golden State II* Court held:

> We agree with petitioner [Golden State Cab Co.] that it is the intended beneficiary of a statutory scheme that prevents governmental interference with the collective-bargaining process and that the NLRA gives it rights enforceable against governmental interference in an action under § 1983.
>
> Id. at 450.
>
> [T]he NLRA creates "rights" in labor and management that are protected against governmental interference.
>
> Id. at 449.

The second part of the *Sea Clammers* test is that even if there is a federal right, the defendant may show that Congress " 'specifically foreclosed a remedy under § 1983,' by providing a 'comprehensive enforcement mechanis[m] for protection of a federal right.' " *Golden State II,* 110 S.Ct. at 448, (citations omitted). The Court noted that " 'We do not lightly conclude that Congress intended to. preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." Id. at 449, (citations omitted). The *Golden State II* Court held:

> a § 1983 action is [not] precluded by the existence of a comprehensive enforcement scheme. Although the National Labor Relations Board has exclusive jurisdiction to prevent and remedy unfair labor practices by employers and union, it has no authority to address conduct protected by the NLRA against governmental interference. There is thus no comprehensive enforcement scheme for preventing state interference with federally protected labor rights that would foreclose the § 1983 remedy.
>
> Id. at 449–50, (citations omitted).

The same analysis must apply in the case of Karen Livadas. The answer to the second question of the *Sea Clammers* test is clear. The § 1983 remedy is not precluded by a comprehensive enforcement scheme, since the National Labor Relations Board does not have the authority to protect NLRA rights against state interference.

The answer to the first question of the *Sea Clammers* test is equally clear, and

appears even to be presupposed by the *Golden State II* opinion. Since the NLRA creates rights in employers enforceable against state interference under § 1983, it must equally vest employees with those rights. The *Golden State II* Court held:

> The NLRA, however, creates rights in *labor and management* both against one another and against the State. By its terms, the Act confers certain rights "generally on *employees* and not merely as against the employer."
>
> (emphasis added, citations omitted).
>
> Id. at 450.
>
> We have held, based on the language, structure, and history of the NLRA, that the Act protects certain rights of *labor and management* against governmental interference. (emphasis added).
>
> Id. at 451.
>
> the interest in being free of governmental regulation of the "peaceful methods of putting economic pressure upon one another," is a right specifically conferred on *employers and employees* by the NLRA.
>
> Id. at 452. (emphasis added).

It is clear that employees, as well as employers, were "the intended beneficiar[ies] of a statutory scheme that prevents governmental interference with the collective-bargaining process and that the NLRA gives [them] rights enforceable against governmental interference in an action under § 1983." Id. at 450.

The DLSE relies upon *Emporium Capwell Co. v. Western Addition Community Organization,* 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975) to argue that while the employer unquestionably has a private right of action under § 1983, individual employees do not have a like right, but that instead, only their union representative has the § 1983 right of action. *Emporium Capwell* involved a small group of unionized employees who wished to negotiate a labor agreement with their employer separate from their union. The *Emporium Capwell* Court held that collective bargaining demanded that all unionized employees be represented by their democratically elected union representatives, and that sep-

arate representation of certain employees would undermine the union's bargaining power as well as the purposes of the NLRA.

In this case, Karen Livadas' action does not undermine the position of her union, but rather helps to vindicate her right to participate in union activity free from penalty. In *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 830–37, 104 S.Ct. 1505, 1510–14, 79 L.Ed.2d 839, the Supreme Court decided that the NLRA creates rights enforceable by individual employees, as well as their unions. In *City Disposal* a truck driver refused to drive his vehicle, because he alleged that it had faulty brakes, and that under his CBA he was not obliged to operate unsafe equipment. The driver was discharged and he brought an action challenging the discharge.

The Supreme Court allowed the action by the individual employee, on the ground that the action itself implicated the collective activity of all the workers. The Court noted that it would not "make sense for a union to negotiate a collective-bargaining agreement if individual employees could not invoke the rights thereby created against their employer." Id. at 832, 104 S.Ct. at 1511. The Court continued:

> When, for instance, James Brown refused to drive a truck he believed to be unsafe, he was in effect reminding his employer that he and his fellow employees, at the time their collective bargaining agreement was signed, had extracted a promise from City Disposal that they would not be asked to drive unsafe trucks. He was also reminding his employer that if it persisted in ordering him to drive an unsafe truck, he could reharness the power of that group to insure the enforcement of that promise. It was just as though James Brown was reassembling his fellow union members to reenact their decision not to drive unsafe trucks.

Id. at 832, 104 S.Ct. at 1511–12.

Similarly, Livadas' action implicates the rights of all of her fellow workers. *City Disposal* affirms the right of an individual employee to defend what she and her coworkers have won through concerted union activity.

Indeed, the plain language of the NLRA shows its intent to bestow rights on individual employees. The Act explicitly designates "employees" as the recipients of NLRA rights. Section seven of the NLRA is entitled "Rights of Employees." 29 U.S.C. § 157.

Therefore, it is clear that Karen Livadas has a private right of action under § 1983 to bring this case as an individual to vindicate her NLRA rights from interference by the state.

*Does the State Action at Issue Infringe Upon the NLRA Right?*

The NLRA was designed in large part to establish rights in employees and employers to engage in certain activities which had previously been of questionable legality. The NLRA armed both employer and employee with certain economic weapons, such as the employees' strike and the employers' lock-out, in an effort to create a balance of power between the two, with the goal of promoting the peaceful settlement of disputes between the parties. Through the NLRA, Congress hoped to move from a history of often violent labor-management relations to a period of "industrial peace."

> Experience has abundantly demonstrated that the recognition of the right of employees to self-organization and to have representatives of their own choosing for the purpose of collective bargaining is often an essential condition of industrial peace. Refusal to confer and negotiate has been one of the most prolific causes of strife. This is such an outstanding fact in the history of labor disturbances that it is a proper subject of judicial notice and requires no citation of instances.

*NLRB v. Jones and Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937).

As well as granting employees and employers rights against each other, the NLRA also granted them rights against the state. *Golden State II*, 110 S.Ct. at 450. Prior to the enactment of the NLRA, it was quite common for state courts to enjoin collective activities of workers, especially strikes. See, e.g., *Vegelahn v. Gunt-*

*ner,* 167 Mass. 92, 44 N.E. 1077 (1896); *United Shoe Machinery Corp. v. Fitzgerald,* 237 Mass. 537, 130 N.E. 86 (1921).

After the enactment of the NLRA, such state court labor injunctions were held to violate the delicate balance of power established by the NLRA by placing the power of the state on the side of the employer. In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court held that a state court could not enjoin a union picket because the injunction "create[d] potential frustration of national purposes." Id. The state was not allowed to place its power behind one party in a labor dispute, since that interfered with the scheme established by the NLRA. The *Garmon* Court held that the state court injunction was preempted by federal labor law.

In the case of Karen Livadas, the state action does not take the traditional form of positive sanctions, such as the labor injunction of *Garmon.* Rather, the state has denied a privilege to certain employees who have exercised their NLRA right to collectively bargain. Here the state grants a privilege to all workers, except those who work under a CBA with an arbitration clause. The analysis must be in two parts: (1) Does the NLRA create a right to work under a CBA with an arbitration clause; (2) does the DLSE action infringe upon this right?

*1. The NLRA Creates a Right to Work Under a CBA with an Arbitration Clause.*

■ The first question is quite straight forward. The right to collectively bargain is the very essence of the NLRA, and the Supreme Court has repeatedly held that arbitration is "part and parcel of the collective bargaining process itself." *Steelworkers v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960).

Section 7, which is the heart of the NLRA, 29 U.S.C. § 157, states:

Employees shall have the right to self-organization, to form, join or assist labor organizations, *to bargain collectively* through representatives of their own choosing ...

(emphasis added).

"The principal purpose of the [National Labor Relations] Act was and is to protect workers who want to organize for collective bargaining." *American Hospital Association v. National Labor Relations Board,* 899 F.2d 651 (7th Cir.1990).

As noted above, the right of grievance arbitration is inseparable from the right of collective bargaining itself. The Court has noted that without arbitration, there is no way to resolve contract disputes short of a strike or federal lawsuit. Arbitration is the *quid pro quo* for which unions exchange their right to strike during the term of the CBA. *Boys Markets v. Retail Clerks Local 770,* 398 U.S. 235, 247–8, 90 S.Ct. 1583, 1590–91, 26 L.Ed.2d 199 (1970). Fully 96% of CBA's provide for arbitration. *Characteristics of Major Collective Bargaining Agreements* (U.S. Dept. of Labor Bull. 2013, 1979), 82.

The Supreme Court held in *Warrior and Gulf,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, that labor arbitration is "at the very heart" of the collective bargaining process; it "is actually a vehicle by which meaning and content are given to the collective bargaining agreement." "The grievance procedure is, in other words, a part of the continuous collective bargaining process."

Therefore, there can be no question that just as the NLRA creates a right in employers to withstand labor strikes, *Golden State I, supra,* the Act equally creates a right in workers to negotiate and to work under CBA's, and that this right entails the right to incorporate an arbitration clause in the CBA. It is this right upon which Karen Livadas contends the DLSE's action infringes.

The DLSE contends that its policy does not actually discriminate against union members, because it is possible for union members to work under a CBA which does not have an arbitration clause, or to work without any CBA at all. These union workers would be entitled to the payment enforcement benefits which Livadas seeks. Also, DLSE continues, it is possible for non-union employees to work under a CBA which has an arbitration clause.

**1534**

DLSE misses the point. This is *not* an equal protection case alleging discrimination against union members. Rather, it is a case alleging state interference with the exercise of the federal right to work under a CBA which has an arbitration clause. The NLRA grants the right to collectively bargain to all employees, union and non-union. The remaining question is whether the State's refusal to enforce the wage payment statute on the behalf of workers who work under CBA's with arbitration clauses infringes upon that right.

*2. The DLSE's Action Infringes Upon the Right to Work Under a Collective Bargaining Agreement Containing an Arbitration Clause.*

■ In the case of Karen Livadas, the state does not positively enjoin Livadas from exercising her NLRA right to collectively bargain, rather, it denies her a benefit because she exercised that right. In the cases noted above, (*Vegelahn v. Guntner*, 167 Mass. 92, 44 N.E. 1077 (1896); *United Shoe Machinery Corp. v. Fitzgerald*, 237 Mass. 537, 130 N.E. 86 (1921); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)), the state enjoined union activity which was protected under the NLRA, specifically striking or picketing. In the instant case, the state denies a benefit to workers who exercise their NLRA right to work under CBA's with arbitration clauses.

The defendant enforces §§ 201 and 203 of the California Labor Code for all workers except those who work under CBA's with arbitration clauses. Section 201 provides that discharged employees must be paid all wages due upon termination. Section 203 provides for penalties for employer non-compliance with § 201. There is no question that state enforcement of the statute constitutes a valuable benefit. The defendant refuses to extend this benefit to workers such as Karen Livadas.

There would be no question that the state could not directly sanction Karen Livadas for working under a CBA, because that would constitute an interference with

her federal rights. The defendant's policy similarly interferes with Livadas' federal NLRA right to collectively bargain.

The Supreme Court has made clear that the state may not condition the receipt of a valuable benefit upon the relinquishment of a federal right. The Ninth Circuit stated in *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 511 (9th Cir.1988):

government may not condition the conferral of a benefit on the relinquishment of a constitutional right: "For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit ... [i]t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests ..."

Citing, *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).[1]

Recent Supreme Court precedent in the labor law area supports this premise. In *Wisconsin Department of Industry v. Gould, Inc.*, 475 U.S. 282, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986), the State of Wisconsin denied to repeat violators of the NLRA eligibility for state procurement contracts. Clearly, such contracts were merely a privilege, rather than a right, but the Supreme Court held that the privilege could not be conditioned upon the relinquishment of NLRA rights. In *Gould* the state had used its power on the side of labor, thereby upsetting the balance of power established by the NLRA. (The state's action was therefore held to be preempted by federal labor law. *See*, section on NLRA preemption doctrine, *infra*).

*Golden State I* is in accord. In *Golden State I* the City of Los Angeles refused to renew the Golden State Taxi Company's franchise permit unless it resolved a strike with its workers. The Supreme Court held that Golden State had a right under the NLRA to withstand the strike. Even though the franchise permit was a privilege, the Court held that the City could not condition the receipt of the privilege on the

1. For example, the state could not grant every citizen a tax rebate, except for those who engage in collective bargaining, even though the action would be the denial of a benefit or privilege rather than a direct sanction.

company's relinquishment of its NLRA right to withstand the strike. The Court held that "the settlement condition imposed by the Los Angeles City Council ... destroyed the balance of power designed by Congress, and frustrated Congress' decision to leave open the use of economic weapons." 475 U.S. at 619, 106 S.Ct. at 1401. "Federal law intended to leave the employer and the union free to use their economic weapons against one another." Id. at 618, 106 S.Ct. at 1401. (citations omitted)

It is clear that employees possess the NLRA right to use economic weapons free from state interference just as much as employers enjoy that right. Id. at 618, 106 S.Ct. at 1400. In the case of Karen Livadas, the state has denied her the privilege of enforcement of California Labor Code §§ 201 and 203 solely on the basis that she works under a collective bargaining agreement having an arbitration clause. The denial of this privilege, like the denial of the privilege of a taxi franchise license, interferes with the exercise of NLRA rights. The only way for employees to receive the privilege is for them to relinquish their NLRA right to collectively bargain. As in *Golden State I*, the state is disallowed from upsetting the "balance of power" established by the NLRA, by allocating privileges in such a way that encourages either labor or management to relinquish its NLRA rights. The DLSE's policy in this case infringes upon Karen Livadas' NLRA right to work under a CBA with an arbitration clause, just as the City of Los Angeles' policy in *Golden State I and II* infringed upon the cab company's NLRA right to withstand a strike.

As discussed earlier, the NLRA right at issue is actionable under § 1983. The DLSE policy therefore constitutes action under color of state law which infringes upon Karen Livadas' NLRA rights in violation of § 1983. *Golden State II.*

*Preemption*

The DLSE contends that it is preempted from enforcing §§ 201 and 203 on behalf of employees who work under CBA's having arbitration clauses. The DLSE rests its contention on two grounds: (1) section 229 of the California Labor statute; (2) federal labor law preemption doctrine under § 301 of the Labor Management Relations Act (LMRA).

*1. Preemption Under the California Labor Statute.*

The DLSE bases its refusal to prosecute Karen Livadas' late wage payment claim at least in part on California Labor Code § 229, which states:

> Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement.

DLSE relies on the decision of the California Court of Appeals in *Plumbing, Heating and Piping Employers Council of Northern California v. Howard (Howard)*, 53 Cal.App.3d 828, 126 Cal.Rptr. 406 (1975), which held § 229 to "preclude[ ] the Labor Commissioner from hearing and enforcing a claim for collection of alleged due and unpaid wages by an employee who belongs to a union which has entered into a collective bargaining agreement which contains an arbitration clause." Id. 53 Cal. App.3d at 832–3, 126 Cal.Rptr. 406.

The short answer is that preemption doctrine is a matter of federal, not state law. A primary purpose of preemption doctrine was to maintain a uniform federal labor law doctrine and to protect federal NLRA rights. Insofar as § 229 and the State's interpretation of it in *Howard* goes beyond the limits of federal preemption doctrine, it is invalid. The DLSE must provide the benefit of enforcement of the wage payment statute to all employees equally unless the federal preemption doctrine *requires* the State to deny enforcement of the wage payment provision to union members working under a CBA. As we shall see below, preemption is not required under federal preemption doctrine.

*2. Federal Preemption Doctrine.*

There are three major strands of federal labor law preemption doctrine, one based upon § 301 of the Labor Management Relations Act (LMRA) and two based upon §§ 7 and 8 of the NLRA. It is the § 301 doctrine which is the source of greatest contention in this case, but NLRA §§ 7 and 8 preemption issues arise as well.

a. LMRA Section 301 Preemption

■ Section 301 preemption doctrine was established in *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and was developed significantly in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). The *Lucas Flour* Court held that § 301 reflected an intention to have a single federal law of CBA interpretation. For this reason, CBA interpretation was held to be a matter for the labor arbitrator, the National Labor Relations Board, and the federal court. The parties to a CBA are not allowed to bypass the arbitration process by filing a claim, such as one for breach of the CBA, in state court. For the employee to do so was also seen as undermining the central role of the labor arbitrator as the primary interpreter of the CBA.

*Allis–Chalmers v. Lueck*, 471 U.S. 202, 212, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985) held that the state court is preempted from hearing cases, even if based in part on state law, if the state claim is "inextricably intertwined with consideration of the terms of the labor contract." Such cases must be heard by the labor arbitrator. Id. at 213, 105 S.Ct. at 1912. In *Allis–Chalmers*, the employee instituted a state tort action against his employer in state court. However, the duty establish-

ing the tort ultimately derived from "the rights and obligations established by the contract." Id. at 217, 105 S.Ct. at 1914. The Supreme Court therefore held that the state court was preempted from hearing the tort action "[b]ecause the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." Id. at 218, 105 S.Ct. at 1914.[2] The Court also noted that an identical claim could have been brought before the arbitrator based upon CBA provisions.

The defendant argues that we should follow *Allis–Chalmers* in the instant case, and require Ms. Livadas to bring her claim before the labor arbitrator. The defendant argues that enforcement of the state provision at issue for employees working under a CBA would be "inextricably intertwined with consideration of the terms of the labor contract." Id. at 213, 105 S.Ct. at 1912. The defendant reads *Allis–Chalmers* too broadly, as is clear from subsequent cases.

In the case of Karen Livadas, the right she seeks to have vindicated does not derive from her contract, but rather, from state law. State law requires the employer to make full payment of wages due to a discharged employee upon termination. Failure to comply with this provision results in penalties. The simple question of whether the statute was violated can be determined wholly independently from the CBA. Karen Livadas was not paid until three days after her termination. It requires reference only to a calendar, not to the CBA, to determine that the statute was violated and penalties are due.

---

**2.** Both parties bring to the attention of the Court, *Stikes v. Chevron USA, Inc.*, 914 F.2d 1265 (9th Cir.1990). *Stikes* involved a suit brought by the employee, Stikes, who claimed that the employer's search of Stikes' automobile violated his California State Constitutional right to privacy. The Ninth Circuit held that the suit was preempted under LMRA § 301 since the privacy right turned on the employee's reasonable expectation of privacy, which in turn depended in part on interpretation of the CBA. Interpretation of the CBA was especially important since it contained a provision whereby the union agreed to encourage its employees to par-

ticipate in the employer's safety program, which included random searches. The State law claim was therefore found to be "inextricably intertwined with the collective bargaining agreement." Id., 914 F.2d at 1269.

For the reasons below, we find that Karen Livadas' state law claim is not similarly intertwined with interpretation of her CBA. While an employee's reasonable expectations of privacy are rooted at least in part in the CBA, the claim for timely payment of final wages is based solely upon state law and not upon the CBA.

Also, unlike the employee in *Allis–Chalmers*, Livadas could not have brought this claim to the arbitrator. The arbitrator may base her decisions solely upon the terms of the CBA, and not upon public law. *Alexander v. Gardner–Denver Company*, 415 U.S. 36, 53–54, 94 S.Ct. 1011, 1022–23, 39 L.Ed.2d 147 (1974). Since the CBA contains no term requiring wage payment immediately upon termination, and imposes no penalty for failure to make such timely payment, there would be no arbitrable issue.

Later cases are in accord with this reading. In *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), a unanimous Supreme Court held that a union employee was not preempted from bringing a state tort claim alleging that the employer had retaliatorily discharged the employee who had filed a worker's compensation claim. The claim was not preempted even though the employee could and did file a concurrent claim with the labor arbitrator under a CBA provision prohibiting discharge without just cause, and even though both claims were based on the same set of events.

The Court held that the state law action was not preempted because it involved a "purely factual inquiry [which did] not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 preemption purposes ...." *Id.* at 407, 108 S.Ct. at 1882.

In *Operating Engineers v. Wilson*, 915 F.2d 535 (9th Cir.1990) the Ninth Circuit held that a state law claim for fraud in the inducement of a collective bargaining agreement was not preempted by § 301. In *Operating Engineers* an employer claimed that a union agent had fraudulently induced him to sign a collective bargaining agreement. The Court, relying on the reasoning of *Lingle*, held that the "state tort claim for fraud in the inducement [of the collective bargaining agreement] is not preempted by section 301 because it does not require reference to the collective bargaining agreement." *Id.*, 915 F.2d at 539.

Our case is quite similar. The state law question can be resolved based on a "purely factual inquiry," *Lingle*, 108 S.Ct. at 1882, of whether the wage payment was made at the time of termination. There is no question that it was not. There is no need to refer to the terms of the CBA to resolve this question.

The defendant argues that penalties under the state statute are based upon wages. The statute provides that the employee is entitled to continue to receive wages until the employer remits the last wage payment. The defendant argues that determination of penalties would therefore require interpretation of the CBA, which is preempted, and should be a matter for the labor arbitrator.

*Lingle*, resolves this issue by holding that "tangential" issues, such as damages in a state law action, may be determined without preemption:

> A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state law claim, not otherwise pre-empted, would stand ... the separate state law analysis would not be thereby pre-empted.

*Lingle*, 486 U.S. at 413, n. 12, 108 S.Ct. at 1885, n. 12.

The *Lingle* court noted that Title VII cases involving union members are not preempted as a matter of federal law, even though damages are based upon backpay, which requires determination of the wage rate set by the CBA. 108 S.Ct. at 1885. Such an issue is "tangential" to the underlying anti-discrimination claim.

The *Allis–Chalmers* Court stated similarly, "not every dispute ... tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301." 471 U.S. 202, 211. See also, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (state law

action for breach of individual employment contract is not preempted by federal labor law). The issue of penalties is a "tangential" issue, as described in *Lingle*, and so does not require the preemption of the underlying state claim, which can be resolved independently of the CBA.

The defendant argues further that the very issue of arbitrability is an arbitrable issue under the terms of the CBA. They argue that the CBA states that the arbitrator is to decide whether any given dispute is arbitrable. Therefore, the DLSE claims that the threshold determination requires interpretation of the CBA, and the matter is therefore preempted.

The defendant's argument is without merit. It would preempt every possible dispute, (including Title VII claims), raised by a union employee since the arbitrator would first have to determine whether the issue was covered by the CBA. Where an employee's claim is based upon state law rather than upon the labor contract, federal law does not require arbitration because there is nothing to arbitrate. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981).

Also, as *Lingle* shows, even if a matter is arbitrable, a concurrent state claim will not be preempted if that claim can be resolved independently of the CBA. In *Lingle* the employee brought both a state claim in state court and a CBA claim before the arbitrator, and there was no preemption.

> [I]f dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.
>
> *Lingle*, 486 U.S. at 409–10, 108 S.Ct. at 1883.

The critical issue for § 301 preemption is whether the state claim can be resolved independently from the CBA (except for

"tangential" issues). As discussed above, Karen Livadas' claim is not preempted based upon this test.

**b. NLRB §§ 7 and 8 Preemption**

■ There are two varieties of federal labor law preemption arising from §§ 7 and 8 of the NLRA.[3] *Garmon* preemption, based upon *San Diego Building Trades v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); and *Machinists* preemption, based upon *Lodge 76, International Ass'n of Machinists and Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). *Garmon* preemption prohibits the state from interfering with activity expressly permitted by the NLRA. (In *Garmon* the state had enjoined a union picket). *Machinists* preemption prevents the state from interfering with activity which the NLRA intended to leave unregulated. (In *Machinists* the state had penalized workers who refused to work overtime. The *Machinists* court held the action to be preempted even though the NLRA does not expressly allow such worker activity.)

The plaintiff argues that enforcement of Labor Code §§ 201 and 203 on behalf of employees working under CBA's having arbitration clauses would not be preempted by NLRA §§ 7 and 8 preemption doctrine, because the Labor Code provisions constitute a state minimum labor standard. The plaintiff further argues that the DLSE's refusal to enforce the Labor Code provisions for employees such as Karen Livadas is preempted by the NLRA since the discriminatory enforcement upsets the balance of power between labor and management established by the NLRA.

In *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), a unanimous Supreme Court held that "in any pre-emption analysis, '[t]he purpose of Congress is the ultimate touchstone.'" Id. at 747, 105 S.Ct. at 2393 (citations omitted), and "courts sustain a local regulation 'unless it conflicts

---

**3.** NLRA §§ 7 and 8 preemption was addressed tangentially above, in the section entitled, "DOES THE STATE ACTION AT ISSUE INFRINGE UPON THE NLRA RIGHT?"

with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." Id. at 747–48, 105 S.Ct. at 2393.

The *Metropolitan Life* Court held that the purposes of the NLRA were to establish an "equality of bargaining power between employees ... and employers ..." and to address the "problem of depressed wage rates." Id. at 753–54, 105 S.Ct. at 2396. Therefore, state regulations which "alter[ ] the economic balance between labor and management [established by the NLRA]" would be preempted. Id. at 750, 105 S.Ct. at 2395, citing, *New York Telephone Co. v. New York Labor Dept.*, 440 U.S. 519, 532, 99 S.Ct. 1328, 1336, 59 L.Ed.2d 553.

In *Metropolitan Life*, the Supreme Court found *not* preempted a state law which required all employers, union and non-union, to provide a certain level of mental health insurance to all insured employees. The Court held that the law was not preempted, even though many CBA's already had terms governing mental health. The court reasoned that "minimum labor standards" of "general applicability" are not preempted because they "affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." Id. 471 U.S. at 755, 105 S.Ct. at 2397. Since such benefits affect all workers equally, they neither encourage nor discourage workers from joining labor unions, and therefore do not upset the balance established by the NLRA.

The Court, noting the purpose of the NLRA to improve the status of workers stated:

> It would turn the policy that animated the Wagner Act on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on nonunion employers.

*Metropolitan Life*, 471 U.S. at 756, 105 S.Ct. at 2397.

By the Supreme Courts' analysis, the DLSE seeks to turn the Wagner Act on its head by providing the benefit of the enforcement of the timely final wage payment provisions only to non-union employees and not to the union employees who were the intended beneficiaries of the NLRA.

Also, DLSE's discriminatory enforcement of the Labor Code provisions upsets the balance or power between labor and management established by the NLRA. It arms employers with an additional weapon to use against unionization, since they will be able to warn employees that if they decide to collectively bargain, they will lose their state right to timely wage payment enforcement. California Labor Code §§ 201 and 203 establish timely payment of final wages as a minimum term of employment for all workers, just as the statute in *Metropolitan Life* established mental health care as a minimum term of employment in Massachusetts. The state may not deny enforcement of that benefit only to workers who are parties to a CBA with an arbitration clause. *A fortiori*, the State is clearly not preempted from providing this benefit to employees who work under CBA's.

*Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) is quite similar to the case at bar. *Fort Halifax* addressed a Maine statute which required employers with more than 100 employees to pay their workers substantial severance pay if they closed or moved their factories. The employer argued that the state was preempted from enforcing the statute on behalf of union employees. The Court held that since the statute applied equally to all workers, it did not upset the balance established by the NLRA, but rather established "rights under state law [which formed] a 'backdrop' for their negotiations." Id. at 21, 107 S.Ct. at 2222, (citations omitted).[4] .

---

**4.** In *Fort Halifax*, as in our case, the amount of severance pay due under the state statute was determined based upon the employees wage rate at the time that the plant closed, which would, of course, be based upon the CBA. Still, the Court held that the Maine statute was not preempted.

From *Fort Halifax* and *Metropolitan Life*, it should be abundantly clear that the state is free to enforce minimum standards regarding wages and conditions of employment on behalf of all employees in the state. The statute at issue in the instant case establishes as a minimum condition of employment in the state of California, that if an employee is fired, the employer must pay all wages due at the time of termination. It is also clear from these cases that if California is to establish such a minimum standard of employment, it must do so for all employees, not only those who do not engage in collective bargaining.

In *Golden State I, supra,* the City of Los Angeles was preempted by federal labor law, from conditioning the benefit of a taxi franchise license upon the resolution of a strike. The Court held that the NLRA conferred a right upon the employer to withstand the strike, and refuse to negotiate. The City's refusal to grant the employer a franchise license until resolving the strike interfered with the employer's NLRA right, and so was preempted by federal labor law. The Court applied preemption analysis and determined that the state's action upset the balance of power established by the NLRA, by "favoring the union." 475 U.S. at 619, 106 S.Ct. at 1401. "States are therefore prohibited from imposing additional restrictions on economic weapons of self-help, such as strikes or lockouts." Id. at 614–15, 106 S.Ct. at 1399. In other words, the City could not grant licenses only to taxicab companies who did not exercise their NLRA rights to withstand strikes.

In the instant case, the state's action interferes with Karen Livadas' NLRA right to collectively bargain. It denies her the benefit of enforcement of §§ 201 and 203 of the California Labor Code solely because she works under a CBA with an arbitration clause. As in *Golden State I*, Livadas is penalized for engaging in an NLRA-protected activity (collective bargaining), and therefore, as in *Golden State I*, the state has "destroyed the balance of power designed by Congress," Id. at 619, 106 S.Ct. at 1401, and the discriminatory policy is preempted.

For the foregoing reasons, and after careful consideration of motions, legal memoranda, exhibits, and arguments of the parties, and consistent with the accompanying Memorandum Opinion, IT IS HEREBY ORDERED that:

1. The plaintiff's motion for summary judgement is GRANTED;

2. The defendant's countermotion for summary judgement is DENIED;

3. The defendant, Lloyd Aubry, and his successors as Labor Commissioner for the State of California, are hereby enjoined to enforce sections 201 and 203 of the California Labor Code without discrimination based upon a given claimant's coverage under a collective-bargaining agreement having an arbitration clause;

4. The defendant, Lloyd Aubry and his successors as Labor Commissioner for the State of California, are hereby ordered to institute an action in the California State Courts pursuant to California Labor Code section 203 to recover any and all penalties due to the plaintiff, Karen Livadas, by her employer, Safeway Stores, on account of her employer's willful failure to pay her wages due at the time of discharge;

5. The defendant, Lloyd Aubry and his successors as Labor Commissioner for the State of California, are hereby declared to have violated the rights of the plaintiff, Karen Livadas, under the National Labor Relations Act, by refusing to afford her certain protections and benefits of the California Wage and Hour Law, (specifically, the enforcement of Labor Code sections 201 and 203), solely on the basis of the fact that her employment was governed by a collective bargaining agreement having an arbitration clause;

6. The defendant, Lloyd Aubry and his successors as Labor Commissioner for the State of California, are hereby ordered to pay as compensatory damages to the plaintiff, Karen Livadas, the full value of her wage claim in the event that the claim is held time-barred by the California State Courts;

7. The defendant, Lloyd Aubry and his successors as Labor Commissioner for the

State of California, are hereby ordered to pay the plaintiff, Karen Livadas, a reasonable attorney fee and costs of suit herein.

IT IS SO ORDERED.