[Civ. No. 36936. First Dist., Div. Three. Dec. 18, 1975.]

PLUMBING, HEATING AND PIPING EMPLOYERS COUNCIL OF NORTHERN CALIFORNIA et al., Plaintiffs and Appellants, v. ROBERT E. HOWARD, as Labor Commissioner, etc., et al., Defendants and Respondents.

**COUNSEL**

Chickering & Gregory, William L. Ferdon and Robert W. Tollen for Plaintiffs and Appellants.

Lazar, Giannini, Gurney & Davidson and Louis Giannini for Defendants and Respondents.

**OPINION**

**SCOTT, J.**—Plumbing, Heating and Piping Employers Council of Northern California (hereinafter, Employers Council) and Madlem Plumbing Company, Inc. (hereinafter, Madlem) appeal from an order denying their request for a preliminary injunction to restrain Robert E. Howard, State Labor Commissioner, and Malvern P. Mayo, deputy state labor commissioner, from proceeding to enforce a wage claim against Madlem by Terry P. Craig.

Craig is a journeyman plumber and a member of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (hereinafter, the U. A.). He was employed by Madlem, a member of the Employers Council.

On behalf of all of its members, the Employers Council negotiates collective bargaining agreements with various local unions throughout Northern California. Each collective bargaining agreement covers the wages, hours, and working conditions of all plumber members of the U. A. while they are working in that local union's geographical area for an employer represented by the Employers Council. The Employers Council is a party to such an agreement with Local 393 for Santa Clara and San Benito Counties. The Employers Council is also a party to an agreement with U. A. Local Union No. 444 for Alameda County.

Madlem has its principal place of business in Mountain View, California, and is a member of the Santa Clara Contractors Association.

From September 12, 1973, to October 23, 1974, it employed Craig on a project located in Alameda County. One journeyman (Craig) and one apprentice were employed by Madlem on this project, and Craig received the journeyman's rate for that work.

Craig contends that he was entitled to receive a foreman's rate of compensation for the Alameda job. This claim is based upon article VII, section 8 of the Local 393 agreement, which reads in pertinent part as follows:

"Section 8. General Foreman and Foremen: A general foreman or forman shall be defined as a journeyman plumber or steam fitter who assumes responsibility for the Employer and supervises work.

"The selection and number of foremen is the responsibility of the Employer. Where three (3) or more journeymen and apprentices are working, one (1) foreman shall be appointed and shall so act until he has a total of nine (9) men under his supervision. Whenever the twenty-first (21st) man is hired, a general foreman shall be named, and then the above ratio shall be followed for additional foremen and men.

"The above ratio shall also be applicable to all fabricating and welding bays.

"Intent of Foreman Ratio to journeyman and apprentices inclusive:

1 to 3 men—a foreman shall be named
1 foreman, 9 men -10
2 foremen, 9 men -20
1 additional man -21—a general foreman
 shall be named
22nd man will be the 3rd foreman.
9 men -30, etc."

Employers Council and Madlem contend that the above language, although internally inconsistent, evidences an intent to leave the employer free not to appoint a foreman on a job where fewer than three journeymen and apprentices are employed. They also claim that the Local 393 agreement is not applicable to this dispute, and that the situation is covered by the Local 444 agreement, which provides that the "area covered by this Agreement shall be all of Alameda County . . ." (art. I, § 1).

The Local 444 agreement provides, in article 4, section 11 thereof, that an employer whose permanent yard is located outside of Alameda County, as in the case of Madlem, must pay wages and fringe benefits to its employees in accordance with the collective bargaining agreement covering the geographical area of the employer's permanent yard. All other provisions are controlled by the Local 444 agreement. Madlem and Employers Council contend that the question of selection and number of foremen on a job does not involve wages and fringe benefits, but rather involves one of the "other provisions," and thus is controlled not by the Local 393 agreement but by the Local 444 agreement. With respect to the selection and number of foremen, the Local 444 agreement provides as follows (art. IX, § 3): "Section 3. The selection and number of foremen is the responsibility of the employer subject only to the following qualifications: A. On any job where there are three (3) and not more than twelve (12) journeymen and/or apprentices, one journeyman shall be selected by the employer to act as foreman and shall receive foreman's rate. . . ." Madlem and Employers Council contend that, in accordance with article IX, section 3, no foreman was required on the work Craig performed, because there were fewer than three journeymen and/or apprentices on the job.

Both of the collective bargaining agreements referred to above contain virtually identical provisions establishing a grievance-arbitration procedure. Defendant Craig did not follow these grievance-arbitration procedures. Instead, he filed a complaint for nonpayment of wages with the state Labor Commissioner, who subsequently issued an order requiring Madlem to appear at a hearing before Deputy Labor Commissioner Mayo. Madlem was represented at the hearing by Employers Council, who urged that Mayo was without jurisdiction to hear and determine Craig's claim. Mayo asserted that he did have jurisdiction and subsequently informed Madlem that Craig had a valid claim, that the Local 393 agreement was applicable, and that Craig was entitled to a foreman's rate of pay. Mayo set another hearing for Madlem to present evidence "to offset any of the foregoing."

Employers Council and Madlem commenced this action to enjoin the Labor Commissioner and Craig from enforcing or attempting to enforce Craig's wage claim in any manner other than that set forth in the collective bargaining agreement.

█ The sole issue here is whether Labor Code section 229 precludes the Labor Commissioner from hearing and enforcing a claim for

collection of alleged due and unpaid wages by an employee who belongs to a union which has entered into a collective bargaining agreement which contains an arbitration clause.

The structure of the Division of Labor Law Enforcement and the general function of the Labor Commissioner and his deputies are found in division 1, chapter 4 of the Labor Code (§§ 79-104). The enforcement provisions of the Division of Labor Law Enforcement relative to the payment of wages are found in division 2, part 1, chapter 1. Article 1 thereof (§§ 200-230) sets forth the statutes regarding payment of wages for general occupations, which would include that of the employee Craig. Articles 2 and 3 of chapter 1 concern seasonal labor and special occupations, not relevant here. Section 229 provides: "Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. *This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement.*" (Italics added.)

The first sentence of section 229 was considered by this court in *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35 [100 Cal.Rptr. 791], affirmed 414 U.S. 117 [38 L.Ed.2d 348, 94 S.Ct. 383]. There, the court affirmed the trial court's denial of an employer's petition to compel arbitration, even though a written agreement to arbitrate did exist. In discussing the first sentence of section 229, the court stated (at p. 43): "No cases have construed section 229 of the Labor Code, but the intent appears quite clear. While the strong public policy of the state favors arbitration (*Federico v. Frick, supra,* 3 Cal.App.3d 872, 875 [84 Cal.Rptr. 74]), the intent of the statute is to provide in the first instance a judicial forum where there exists a dispute as to wages." The arbitration agreement in *Ware* was not the product of a collective bargaining agreement; hence, the court did not reach the second sentence of section 229. We reach it here.

A primary aim of the California Legislature in adopting section 229 was to recognize the importance of both collective bargaining agreements and arbitration. (Labor Law (Cont. Ed. Bar 1960) Grievance; Arbitration, § 9.34, p. 365.) There is a strong policy on both the national[1]

---

[1]In their complaint, appellants alleged that the U. A. is a labor organization representing employees in an industry affecting commerce, and hence falls within the strictures of the Labor-Management Relations Act of 1947 (29 U.S.C. § 141 et seq.). This

and state levels favoring collective bargaining agreements and the resolution of labor disputes via grievance-arbitration procedures. It has been recognized that " 'arbitration under collective bargaining agreements [is] one of the most potent factors in establishing and maintaining peace and protection in industry' "; hence, "it can be safely stated that it is a fundamental part of both federal and California public policy to promote industrial stabilization through the medium of collective bargaining agreements." (*Posner* v. *Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 180, 183 [14 Cal.Rptr. 297, 363 P.2d 313].) This policy can be effectuated only if the means chosen by the parties for settlement of their differences is given full play. (*Steelworkers* v. *American Mfg. Co.* (1960) 363 U.S. 564, 566 [4 L.Ed.2d 1403, 1405-1406, 80 S.Ct. 1343].) Thus, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress. (*Republic Steel* v. *Maddox* (1965) 379 U.S. 650, 652 [13 L.Ed.2d 580, 582-583, 85 S.Ct. 614].) "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." (379 U.S. at p. 653 [13 L.Ed.2d at p. 583].)

■ Accordingly, the rule is settled that an employee must seek to exhaust exclusive grievance and arbitration procedures established by the collective bargaining agreement before resorting to court action. (*Vaca* v. *Sipes* (1967) 386 U.S. 171, 184 [17 L.Ed.2d 842, 854, 87 S.Ct. 903]; see also Labor Law (Cont. Ed. Bar 1960) Grievance; Arbitration, § 9.33, pp. 364-365.) ■ This policy favoring collective bargaining appears to be embodied in the second sentence of Labor Code section 229. To allow the Labor Commissioner to pursue enforcement of a wage claim in the employee's stead, despite the existence of a collective bargaining agreement with an arbitration clause, would clearly thwart this policy. For these reasons, it is concluded that the Legislature in enacting section 229 sought to encourage the resolution of labor disputes covered by collective bargaining agreements via arbitration-grievance procedures contained therein, and therefore intended to prohibit the

allegation was not contested below; thus it is argued that the facts of this case are governed by federal law. This argument appears to be well taken. (See *O'Malley* v. *Wilshire Oil Co.* (1963) 59 Cal.2d 482, 486-487, 496 [30 Cal.Rptr. 452, 381 P.2d 188].) However, since our holding here is consistent with federal law, we need not address ourselves to the issue of federal preemption raised by appellants.

Labor Commissioner from assuming jurisdiction to enforce claims for wages arising under collective bargaining agreements.

The trial court in the instant case viewed the above provision as requiring arbitration "only when there is involved in the wage dispute *a question of interpretation of the terms and application of the collective bargaining agreement.*" (Italics added.) The Labor Commissioner asserted and the lower court apparently found that the dispute in this case did not involve such an issue of interpretation. The trial court's reading of the statute appears to be erroneous. The second sentence of section 229 expressly refers to "any dispute concerning the *interpretation or application* of any collective bargaining agreement" (italics added). This language is consistent with the Labor-Management Relations Act, which recites: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the *application or interpretation* of an existing collective bargaining agreement." (29 U.S.C. § 173, subd. (d); italics added.)

The circumstances of the case at bench involve a dispute concerning the application of a collective bargaining agreement. Appellants assert that Craig's wage claim is covered by the Local 444 agreement, while Craig contends that the Local 393 agreement should control. As the Supreme Court stated in the case of *Posner* v. *Grunwald-Marx, Inc., supra,* 56 Cal.2d at page 181: " 'Any controversy under a collective bargaining contract which requires first a determination that the contract does or does not define the rights or duties of the parties in an existing situation is subject to arbitration if the agreement provides for the arbitration of disputes that arise out of the contract.' " Furthermore, the facts of this case also involve the interpretation of a collective bargaining agreement. If it is determined that the Local 393 agreement is applicable, it will be necessary to interpret the provisions of that agreement to determine whether a foreman is required on a job involving fewer than three journeymen and apprentices.

■ Although the granting or refusal of a preliminary injunction is largely within the discretion of the trial court, it is well settled that such discretion is not whimsical or unlimited, and the reviewing court should reverse an order denying a preliminary injunction to which a plaintiff is obviously entitled. (2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 79, p. 1517.) ■ To permit defendants to circumvent the expressed judicial and legislative policy favoring collective bargaining and arbitration by enforcement of Craig's claim outside the collective

bargaining structure would subject plaintiffs to irreparable injury not compensable in damages.

The order denying petition for preliminary injunction is reversed. The cause is remanded with directions to grant the preliminary injunction and further, to return sums posted as bond pursuant to this court's writ of supersedeas.

Draper, P. J., and Brown (H. C.), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 11, 1976.