Karen LIVADAS, Plaintiff–Appellee,

v.

Lloyd AUBRY, in his official capacity as Labor Commissioner for the State of California, Defendant–Appellant.

No. 90–16650.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1991.

Decided Sept. 11, 1991.

As Amended on Denial of Rehearing and Rehearing En Banc March 8, 1993.

H. Thomas Cadell, Jr., Chief Counsel, Div. of Labor Standards Enforcement, Dept. of Industrial Relations, San Francisco, CA, for defendant-appellant.

Michael T. Anderson, Davis, Cowell & Bowe, San Francisco, CA, for plaintiff-appellee.

Before: ALARCON, KOZINSKI and RYMER, Circuit Judges.

## ORDER

The opinion filed September 11, 1991, is amended as follows:

[Editor's Note: Opinion amended for publication.]

Judge Kozinski, as dissenter, neither joins in nor opposes the amendment to the majority opinion contained in this order.

With the above amendment, the majority of the panel has voted to deny the petition for rehearing. Judge Rymer has voted to reject the suggestion for rehearing en banc and Judge Alarcon so recommends. Judge Kozinski has voted to grant the petition for rehearing and to accept the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to hear the matter en banc. Fed. R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

## OPINION

RYMER, Circuit Judge:

Karen Livadas brought this action under 42 U.S.C. § 1983 against Lloyd Aubry, the Labor Commissioner of California (Commissioner). She argues that the Commissioner deprived her of her right under the National Labor Relations Act (NLRA) to bargain collectively because he denied her enforcement of certain sections of the California Labor Code based on his determination that adjudicating her dispute would concern the interpretation or application of a collective bargaining agreement containing an arbitration clause. The district court granted Livadas's motion for summary judgment. We reverse.

## I

Livadas was terminated from her job at Safeway on January 2, 1990. On that day, she requested all pay due her. The store manager refused, saying that he did not have payroll records at the store and that he would instead mail her a check. Livadas received the check on January 5, 1990.

Livadas does not dispute the amount of the check, but she contends that Safeway's three-day delay in payment violated California law. California Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Section 203 provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Section[ ] 201 ..., any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid." Based on these statutes, Livadas claims that Safeway owes her penalty payments for the three days her check was delayed.

On January 9, 1990, Livadas filed a claim for the penalties with the California Division of Labor Standards Enforcement (DLSE). The Commissioner heads the DLSE. He may prosecute actions to collect penalties for persons who, in his judgment, "are financially unable to employ counsel and ... have claims which are valid and enforceable." Cal.Lab.Code § 98.3(a).

In a letter dated February 7, 1990, the DLSE informed Livadas that it could not proceed with her claim because California Labor Code § 229 precludes the DLSE from adjudicating "any dispute concerning the interpretation or application of any collective bargaining agreement containing an arbitration clause." The letter explained that it was the DLSE's understanding that Livadas was covered by a collective bargaining agreement containing an arbitration clause. Because § 203 requires that wages continue at the "same rate," and the collective bargaining agreement established Livadas's rate of pay, the DLSE concluded that prosecuting Livadas's claim would require applying the collective bargaining agreement.

On February 16, 1990, Livadas filed a complaint in the district court under 42 U.S.C. § 1983 against Lloyd Aubry in his official capacity as Labor Commissioner,

seeking injunctive and declaratory relief and damages based on his refusal to prosecute her claim. She alleged that the Commissioner's policy of not enforcing § 203 claims for employees who worked under collective bargaining agreements denied her the benefit of his enforcement powers on the sole basis that she was a union member covered by a collective bargaining agreement. Such a policy, she contended, interfered with her right under the NLRA to bargain collectively.

Both parties moved for summary judgment. The district judge initially denied both motions, concluding that there were genuine issues of material fact. Livadas made a motion for reconsideration, which the district court granted. Upon reconsideration, the district court granted Livadas's motion for summary judgment, concluding that § 1983 provided Livadas with a cause of action and that the Commissioner's policy deprived Livadas of her right to bargain collectively. The Commissioner appeals.

## II.

■ The threshold issue in this case is whether Livadas has asserted the sort of violation that is actionable under § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Supreme Court has interpreted § 1983 to provide a cause of action for a deprivation of rights granted by the NLRA. In *Golden State Transit Corp. v. City of Los Angeles, (Golden State II)*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), the Court held that an employer could bring an action under § 1983 based on a city's interference with the collective bargaining process. In that case, the city had conditioned renewal of the employer's taxicab franchise on its settling a strike.

The Court had held in an earlier appeal that the city's action interfered with and was therefore preempted by the NLRA because an employer's withstanding a strike is conduct that Congress intended to be left unregulated either by it or by the states. *Golden State Transit Corp. v. City of Los Angeles, (Golden State I)*, 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986).

In *Golden State II*, the Court applied a two-part test to determine whether the city's violation was actionable under § 1983:

> First, the plaintiff must assert the violation of a federal right.... In deciding whether a federal right has been violated, we have considered whether the provision in question creates obligations binding on the governmental unit or rather "does no more than express a congressional preference for certain kinds of treatment." ... We have also asked whether the provision in question was "inten[ded] to benefit" the putative plaintiff.
>
> Second, even when a plaintiff has asserted a federal right, the defendant may shown that Congress "specifically foreclosed a remedy under § 1983," by providing a "comprehensive enforcement mechanis[m] for protection of a federal right."

493 U.S. at 106, 110 S.Ct. at 448, 107 L.Ed.2d at 427–28 (citations omitted).

The Court concluded that the second prong was satisfied because, while Congress has created a comprehensive scheme to prevent unfair labor practices by employers and unions (through the creation of the NLRB), it has not provided any mechanism to address governmental interference with rights protected by the NLRA. *Id.* 493 U.S. at 108, 110 S.Ct. at 449, 107 L.Ed.2d at 429. The Court went on to conclude that the first prong was also satisfied because the NLRA implicitly protects an employer's right to use permissible economic weapons free from governmental interference. *Id.* 493 U.S. at 110–13, 110 S.Ct. at 450–52, 107 L.Ed.2d at 430–32.

*Golden State II*'s resolution of the second prong applies with equal force in this

case. The NLRB has no power to address the Commissioner's alleged interference with Livadas's NLRA rights. Thus, a § 1983 suit is not precluded on this ground.

The parties' dispute on this issue centers on whether Livadas has asserted a "right" that is protected by the NLRA against governmental interference. Livadas contends that the NLRA grants her a right, as an employee, to bargain collectively.

The plain language of the NLRA supports Livadas's position. Section 7, 29 U.S.C. § 157, provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining....

Similarly, the NLRA declares it to be the policy of the United States to

> eliminate the causes of certain substantial obstructions to the free flow of commerce ... by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.

29 U.S.C. § 151.

The Supreme Court in *Golden State II* also seemed to assume that the NLRA establishes a right to bargain collectively. It reasoned that "[t]he rights protected against state interference ... are not *limited* to those explicitly set forth in § 7 as protected against private interference." 493 U.S. at 110, 110 S.Ct. at 450, 107 L.Ed.2d at 430 (emphasis added). It concluded that the employer was "the intended beneficiary of a statutory scheme that prevents governmental interference with the *collective-bargaining process.*" *Id.* (emphasis added). The right in *Golden State* to be free from interference in the collective bargaining process would be meaningless if parties had no right to engage in collective bargaining in the first place.

■ The Commissioner acknowledges this right to bargain collectively, but he contends that the right to bargain belongs only to the union, not to an individual employee. But the NLRA speaks in terms of the rights of employees, not unions. The Commissioner's interpretation that it only gives unions the right to bargain collectively does not comport with § 7's language that *employees* have the right "to bargain collectively *through* representatives." 29 U.S.C. § 157 (emphasis added).

Moreover, the Supreme Court has interpreted § 7 to apply to acts by individual employees, not just to acts by unions. In *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984), the Court held that an employee's assertion of a right under his CBA was "concerted activity" for purposes of § 7, such that his discharge based on it constituted an unfair labor practice. In reaching its conclusion, the Court explained that an individual's acts in joining and assisting a labor organization are protected under § 7, noting that "Congress viewed each employee as engaged in concerted activity." *Id.* at 833, 104 S.Ct. at 1512.

The Commissioner cites *Emporium Capwell Co. v. Western Addition Community Organization*, 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975), in support of his position that Livadas has no individual right to bargain collectively. There, a group of minority employees contended that they had a right, under § 7, to bargain with their employer without the assistance of their union. The Court held that they did not because § 7 only protects the right to bargain through elected representatives, that is, to bargain collectively, and it does not protect the right to bargain separately.

*Emporium Capwell* has no application here. Livadas does not assert that she has a right to bargain independently of her union. Indeed, the whole dispute arose in this case because she was covered by a *collective* bargaining agreement. The right she asserts is simply to be allowed to participate in her union's collective bargaining activity.

We conclude that Livadas has a cause of action under § 1983. Federal law gives her a right to engage in collective bargaining, and § 1983 therefore provides a remedy for a deprivation of that right.

### III

Turning to the merits, we must decided whether the Commissioner has in fact deprived Livadas of her right under the NLRA to bargain collectively. The Commissioner's policy is not to adjudicate any dispute concerning the interpretation or application of any collective bargaining agreement containing an arbitration clause. Livadas does not object to this policy because she contends that the Commissioner's enforcement under those circumstances would be preempted by federal labor law. Rather, she claims that the Commissioner applied the policy incorrectly in this case because, she contends, California Labor Code §§ 201 and 203 provide independent state rights and do not concern the interpretation or application of collective bargaining agreements. For that reason, she asserts that her claim in fact would not be preempted by federal labor law. She argues that by misapplying the policy in her case and going beyond federal preemption principles, the Commissioner has deprived her of her right to bargain collectively.

### A. The Commissioner's policy

■ The Commissioner explained fully his reason for denying Livadas enforcement of her claim in the DLSE's letter of February 7, 1990:

> It is our understanding that the employees working for Safeway are covered by a collective bargaining agreement which contains an arbitration clause. The provisions of Labor Code Section 229 preclude this Division from adjudicating any dispute concerning the interpretation or application of any collective bargaining agreement containing an arbitration clause.
>
> Labor Code Section 203 requires that the wages continue at the "same rate" until paid. In order to establish what the "same rate" was, it is necessary to look

to the collective bargaining agreement and "apply" that agreement. The courts have pointed out that such an application is exactly what the provisions of Labor Code Section 229 prohibit.

The Commissioner thus made clear that his policy is not to enforce any claim that concerns the interpretation or application of any collective bargaining agreement containing an arbitration clause, pursuant to California Labor Code § 229. He then interpreted § 229 to preclude enforcement in Livadas's case because deciding her § 203 claim would require applying her collective bargaining agreement, which contains an arbitration clause.

The Commissioner's statement of his policy is entirely consistent with the provisions of Labor Code § 229, which states:

> Actions to enforce the provisions of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate. This section shall not apply to claims involving any dispute concerning the interpretation or application of any collective bargaining agreement containing such an arbitration agreement.

The California courts have interpreted § 229 as "prohibit[ing] the Labor Commissioner from assuming jurisdiction to enforce claims for wages arising under collective bargaining agreements." *Plumbing, Heating & Piping Employers Council v. Howard,* 53 Cal.App.3d 828, 834–35, 126 Cal.Rptr. 406, 410 (1975).

The Commissioner points out that § 229 is intended to reflect principles of federal preemption in the area of labor relations. The court in *Howard* explained that the aim of § 229 is to "recognize the importance of both collective bargaining agreements and arbitration," *id.* at 833, 126 Cal. Rptr. 406, and to maintain the primacy of federal labor law. *Id.* at 833–35, 126 Cal. Rptr. 406; *see also Bechtel Constr., Inc. v. United Brotherhood of Carpenters,* 812 F.2d 1220, 1223 (9th Cir.1987). Similar to California's rule, the Supreme Court has held that state law claims are preempted if they are "inextricably intertwined with con-

sideration of the terms of the labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). We therefore understand § 229 to preclude the adjudication of claims that would be preempted by federal labor law.

The Commissioner's policy of not enforcing claims that concern the interpretation or application of collective bargaining agreements containing arbitration clauses is thus based on the idea that such enforcement would be preempted by federal law.

### B. Deprivation of Livadas's NLRA right

■ We do not believe that the Commissioner's denial of enforcement on the basis that Livadas's claim would concern the interpretation or application of a collective bargaining agreement deprived Livadas of her right to bargain collectively; indeed, we do not believe it implicated her federal rights at all. Livadas does not object to the rule stated in § 229 and *Howard* because she recognizes that it reflects principles of federal preemption. She further recognizes that she could not have a right to the Commissioner's enforcement if that enforcement were preempted because, of course, she does not have the right to compel the Commissioner to do that which federal law does not permit him to do. Livadas's objection is rather that the Commissioner misinterpreted the rule because she claims that in fact her § 203 claim would not be preempted by federal labor law. We need not reach the question of whether the Commissioner incorrectly determined that her § 203 claim was preempted because, even if he did, Livadas has not established a deprivation of her right to bargain collectively.

Livadas relies on *Golden State I and II* to support her argument that the Commissioner may not condition his enforcement on her not having worked under a collective bargaining agreement. *Golden State* makes clear that the denial of a benefit in some cases can be sufficient to constitute an infringement. There, the city had conditioned a franchise renewal on the employer's settlement of a strike. Even though the franchise renewal was a privilege, not a right, the Court held that conditioning its conferral on relinquishment of the employer's federally protected right to withstand the strike impermissibly infringed that right. *See also Bullfrog Films, Inc. v. Wick,* 847 F.2d 502, 511 (9th Cir.1988) ("government may not condition the conferral of a benefit on the relinquishment of a constitutional right"). Thus, Livadas correctly states the law when she states that conditioning a benefit on the relinquishment of a federal right can infringe that right.

But Livadas's general statement of the law does not dispose of this case. There is a fundamental difference between this case and *Golden State.* In *Golden State,* the city's condition itself was impermissible. The city demanded that the taxicab company settle its strike as a condition for renewing its franchise. The city's condition on the conferral of its benefit was that the employer not exercise its federally protected right to withstand a strike.

■ Here, the Commissioner's condition is *not* that Livadas not exercise her right to bargain collectively. It is that enforcement not require the interpretation or application of a collective bargaining agreement. That condition is perfectly permissible under federal law. In fact, it is required under federal law, for if adjudicating the dispute would require interpreting a collective bargaining agreement, federal law would preempt the adjudication. Livadas does not contest this point, and she therefore does not challenge the condition itself.

Rather, she challenges the application of the rule to her case. She claims that the Commissioner erred in deciding that her claim was preempted. This argument would be equivalent to the employer in *Golden State* arguing that the city deprived it of its federal rights because the employer had in fact settled the strike. The argument clearly would have failed because the determination of whether or not the employer had complied with the city's condition is simply a question of in-

terpreting the city's condition and does not implicate federal rights.

■ Similarly here, because Livadas does not challenge the condition the Commissioner places on his enforcement but only his interpretation that the condition has not been satisfied, she has not demonstrated any deprivation of her federal rights. Simply because the Commissioner (arguably) erroneously determined that her claim would be preempted does not invalidate the condition he placed on his enforcement. It does not change the fact the he has conditioned his enforcement on his determining that the claim would not be preempted by federal labor law. And it does not change the fact that his condition is perfectly permissible, indeed required, under federal law.

Livadas is left, then, with the simple claim that the Commissioner erroneously interpreted his own policy. That amounts only to a state law claim that she is in fact eligible for the Commissioner's enforcement under California Labor Code § 229. The appropriate relief would be a writ of mandate from the California courts, *see Baker v. Aubry*, 216 Cal.App.3d 1259, 265 Cal.Rptr. 381 (1989), *review denied*, Mar. 15, 1990, *cert. denied*, 498 U.S. 820, 111 S.Ct. 66, 112 L.Ed.2d 40 (1990), and she could seek such relief on the ground that the Commissioner misinterpreted § 229. A misinterpretation of a perfectly valid state statute, however, does not provide grounds for federal relief.

■ To hold that Livadas is entitled to federal relief in this case would require us to hold that she is entitled under the NLRA to a correct interpretation of California law regarding enforcement of § 203 claims. We cannot so hold. Livadas's in the same position as every other employee in the state when it comes to seeking the Commissioner's enforcement. Every employee who seeks enforcement is subject to an eligibility determination, and every employee who seeks enforcement is subject to the

risk that the Commissioner will get it wrong. If the Commissioner gets it wrong, the employee (whether or not she worked under a collective bargaining agreement) can seek a writ of mandate to correct the error. Thus, we do not see how the Commissioner, simply by making an erroneous eligibility determination, has penalized Livadas for the exercise of her right to bargain collectively because he has treated her exactly the same as every other employee in the state.

Of course, by virtue of the fact that Livadas is covered by a collective bargaining agreement, she may be more likely to get an erroneous eligibility determination than employees who do not work under collective bargaining agreements because the Commissioner is more likely to hold that her claim is preempted by federal labor law.[1] But that is a function of the condition placed on enforcement that the claim not be preempted—a condition to which she does not object and could not object. It is also perhaps a function of the complexity of preemption law and of the inherent tension between federal and state systems for adjudicating labor disputes. It is *not* a function of the Commissioner's placing any kind of impermissible condition on the benefit of his enforcement.

■ We cannot believe that Congress intended in granting a right to bargain collectively to give employees who choose to do so the right to have a state official correctly interpret the state's own law. That would place employees who bargain collectively in a better position than those who do not because it gives them an extra avenue of redress for the erroneous determination of state law. Because § 7 of the NLRA gives employees the right to *refrain* from bargaining collectively as well as the right to do so, 29 U.S.C. § 157, we do not believe that Congress could have intended to confer extra rights on employees who choose to bargain collectively. At

---

1. Presumably, the only way an employee who does not work under a collective bargaining agreement could get this same determination is if the Commissioner makes an erroneous *factual* determination that the employee did work under a collective bargaining agreement.

least without an express direction from Congress that it so intended, we will not read the right to bargain collectively to include such an extraordinary right.

Finally, we are also persuaded by the more general policies of federal labor law that Congress did not intend to protect workers from an erroneous determination that their state law claims are preempted by federal labor law. Congress intended to create a uniform body of federal law for labor disputes arising under collective bargaining agreements. To that end, it created a comprehensive scheme for adjudicating such disputes. *See generally* 29 U.S.C. § 185 (Labor Management Relations Act § 301); *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 101–05, 82 S.Ct. 571, 575–77, 7 L.Ed.2d 593 (1962). Congress also intended that arbitration would be central to the resolution of disputes arising under collective bargaining agreements. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–81, 80 S.Ct. 1347, 1350–52, 4 L.Ed.2d 1409 (1960).

Given the primacy of the federal scheme for handling labor disputes, we believe that Congress would not want state officials erring on the side of adjudicating state law disputes whenever it is a close call as to whether a claim is preempted. If anything, Congress would presumably want state officials to defer to arbitration and adjudication under the federal scheme if a claim even arguably is intertwined with consider-ation of a collective bargaining agreement containing an arbitration clause.

In essence, we think Livadas is claiming that the Commissioner wrongly decided that she was not eligible for enforcement. Because she does not challenge the criterion he used for determining her eligibility (that her claim not be preempted), her claim boils down to a claim that he interpreted his own rule incorrectly. We believe this claim would only establish an error under California law (that she was in fact entitled to enforcement) and not a deprivation of her federal right. We see no way in which an erroneous determination of eligibility for the Commissioner's enforcement under California law can be transformed into a deprivation of a federal right. Therefore, we conclude that Livadas has failed to show that the Commissioner deprived her of her right to bargain collectively under the NLRA, and the district court improperly granted summary judgment in her favor.[2]

REVERSED and REMANDED, with instructions to enter judgment in favor of the defendant-appellant, Lloyd Aubry.

KOZINSKI, Circuit Judge, dissenting.

According to my colleagues, the question presented to us is whether Karen Livadas was entitled to a correct interpretation of state law. See Majority at 558–59. The answer to this question is clearly no. The answer is much different, however, if one asks the right question: May Karen Livadas be denied state-law benefits just be-

---

2. We recently held in *Barnes v. Stone Container Corp.*, 942 F.2d 689 (9th Cir.1991), that imposition of a just cause term by the Montana Wrongful Discharge Act, which excepted employees covered by a collective bargaining agreement, on parties who were in the process of negotiating a new collective bargaining agreement, interferes with the collective bargaining process and is therefore preempted by the NLRA under *International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). Unlike this case, *Barnes* was a private action between employee and employer where the issue was whether the employee could permissibly pursue a state law claim without running afoul of *Machinists* preemption even though he was not then covered by a collective bargaining agreement. Here, there is no dispute that Livadas is covered by a collective bargaining agreement with an arbitration clause that is normally subject to federal preemption. Nor is there any contention that California Labor Code § 229 incorrectly incorporates preemption principles or is inapplicable to the Commissioner's decision whether to prosecute Livadas's claim against Safeway. Accordingly, Livadas's case is not like *Golden State*, where the city's condition itself was impermissible, *Barnes*, where the state's preemption provision was inapplicable, or *Rum Creek Coal Sales v. Caperton*, 971 F.2d 1148, 1152–54 (4th Cir. 1992), where the state's excepting labor disputes from its trespass law cut too broad a preemption path.

cause she is covered by a collective bargaining agreement? It is our responsibility to answer the question fairly presented to us by the litigants, not one we might prefer they had asked. Because the majority comes up with the right answer to the wrong question, I must dissent.

## I

A. What happened here is fairly simple: Karen Livadas lost her job at Safeway and the employer did not send her her final paycheck until three days later. This is not a big deal, but under California law an employee is entitled to her paycheck on the date of departure; the law provides a penalty for any delay. Cal. Labor Code §§ 201 & 203. To ensure that impecunious employees are not denied their statutory rights, the state Labor Commission—the defendant here—is charged with enforcing such claims on behalf of employees who have valid claims and who are financially unable to employ an attorney, *Id.* § 98.3(a).

The Commissioner does have a good bit of discretion whether to press a particular employee's claim. For example, it is the Commissioner who must determine under what circumstances an employee is deemed financially unable to employ counsel. The Commissioner must also resolve an important question of state law: Does the employee have a valid claim? Had the Commissioner refused to enforce Livadas's claim for either of these reasons, this would have been purely a matter of state law and not the proper subject of a federal action.

But the Commissioner did not refuse to press Livadas's claim on either of these grounds. Instead, he refused to litigate on her behalf because she is covered by a collective bargaining agreement. In so doing, the Commissioner treated employees who are covered by a CBA in a different— and less favorable—manner than all other employees. This is clearly discrimination based on an exercise of protected federal rights. Whether such discrimination is permissible is a question of federal, not state, law.

The majority is distracted by the fact that the Commissioner's policy is based on his interpretation of section 229 of the California Labor Code, which precludes the Commissioner from getting involved in disputes calling for an interpretation of a CBA. The Commissioner construes this section as prohibiting enforcement of Livadas's claim. But surely it doesn't matter *why* the Commissioner engages in invidious discrimination. Were the Commissioner to interpret state law as authorizing the enforcement of section 201 claims only on behalf of whites, would his decision be insulated from federal scrutiny? The point is, the Commissioner is applying state law and his own policy in a way that impinges on protected federal rights. We can't duck the question whether federal law renders such discrimination impermissible.

B. Recognizing perhaps that state law cannot carry the day, the majority seeks refuge in a novel doctrine of quasi-preemption. Assuming, the majority says, that the Commissioner's enforcement of section 201 would not be preempted by federal law,[1] the Commissioner is nevertheless justified in staying his hand by virtue of certain penumbras and emanations radiating from the body of federal labor law: "Given the primacy of the federal scheme for handling labor disputes, we believe that Congress would not want state officials erring on the side of adjudicating state law disputes whenever it is a close call as to whether a claim is preempted. If anything, Congress would presumably want state officials to defer to arbitration and adjudication under the federal scheme if a claim even arguably is intertwined with consideration of a collective bargaining agreement containing an arbitration clause." Majority at 559–60.

This rationale is remarkable for more reasons than one. To begin with, our func-

---

1. This is more than a reasonable assumption; it's a fact. See below at II.A.

tion is to apply the laws Congress has written, not to guess what Congress "presumably" would have wanted as to matters about which it did not legislate. Further, the theory of quasi-preemption the majority adopts is strikingly similar to the theory of preemption considered and rejected by the Supreme Court and by our court. See *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 25 n. 28, 103 S.Ct. 2841, 2854 n. 28, 77 L.Ed.2d 420 (1983) ("we have never intimated that any action merely relating to a contract within the coverage of [LMRA] § 301 arises exclusively under that section"); *Miller v. AT & T Network Systems*, 850 F.2d 543, 546–47 (9th Cir.1988). To the extent my colleagues are divining some preemptive corona surrounding the federal labor laws, it surely cannot include that which the Supreme Court has said is *not* preempted.

The question of preemption is, of course, significant. To the extent the Commissioner's enforcement of section 201 of the California Labor Code conflicts with federal labor law, the Commissioner is without authority to act. But once we step outside the arena of actual preemption, federal law imposes no obligation on the Commissioner to refrain from acting. And his refusal to act simply because the employee is covered by a CBA raises a serious question of anti-union discrimination. The majority's attempt to find safety between the pendulum of preemption and the pit of unlawful discrimination is simply unavailing.

## II

The issue presented to us is really very simple: Is the relief Livadas seeks in fact preempted by the federal labor laws? And if not, is the Commissioner acting unlawfully in refusing to enforce Livadas's claim because she is covered by a CBA?

A. The first question has an easy answer: No. State-law claims are preempted by federal labor law if they are "inextricably intertwined with consideration of the terms of the labor contract." *Allis–Chal-*

*mers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). We have interpreted this language to require federal preemption of state-law causes of action for violating a CBA, founded on rights created by a CBA, or substantially dependent on or governed by the terms of a CBA. See *Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 1987), *cert denied*, 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988). On the other hand, there is no incompatibility "between federal rules designed to restore the equality of bargaining power, and state ... legislation that imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 754, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985). In *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court held that state-law claims are "independent" of the CBA and therefore not preempted where "resolution of the state-law claim does not require construing the collective bargaining agreement." *Id.* at 407, 108 S.Ct. at 1882.

In *Galvez v. Kuhn*, 933 F.2d 773 (9th Cir.1991), we interpreted *Lingle* and held that an employee's claim for assault and battery based on unsafe working conditions was not preempted, even though there were provisions in the CBA that governed the work environment. Because the employee's claim "alleg[ed] violation of a duty owned to all citizens," the state-law claim could be decided without reference to the CBA. *Id.* at 777 (emphasis added); see also *Operating Engineers Pension Trust v. Wilson*, 915 F.2d 535 (9th Cir.1990) (state-law action for fraud in the inducement not preempted because independent of rights under CBA).

Livadas's claim against Safeway is grounded only in state law: A court could find that the employer did not pay her immediately upon termination—and thus violated the statute—without ever looking at the CBA. The Commissioner's argument

that enforcement of section 201 requires an application of the CBA because he will have to consult the contract to determine Livadas's wage rate is answered by the Supreme Court in *Lingle:* "A collective-bargaining agreement may, of course, contain information *such as rate of pay* and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.... In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12 (emphasis added).

B. The second question is somewhat closer. The Commissioner seems to be badly mistaken about the scope of federal labor law preemption—honestly mistaken, but mistaken nonetheless. That the Commissioner's policy is based on an honest (though flagrant) mistake of law does not save it from invalidity. He is a state official administering a state program in a way that arguably burdens the right of employees to participate in collective bargaining. Where, as here, the policy treats individuals differently based on the exercise of a federally protected right, we must look at the effects of the policy, not merely its purposes.

The effect of the Commissioner's policy is not earthshaking, but neither is it insignificant. It denies employees who are covered by a CBA the right to have their state labor law claims pressed by the state Labor Commissioner free of charge. What this means is that impecunious employees who serve at will, pursuant to individual contracts and those who are covered by implied contracts are all entitled to the services of a state official; the only employees excluded as a class are those who exercise their federal labor rights. As the district court noted, "[t]he parties agree that the

defendant provides certain valuable protections and benefits to all California employees except those who work under collective bargaining agreements." *Livadas v. Aubry,* 749 F.Supp. 1526, 1528 (N.D.Cal.1990). I find it hard to conclude that denying a valuable benefit to employees simply because they are covered by a CBA does not burden the exercise of rights protected by the NLRA.[2]

I might nevertheless conclude that this burden on the collective bargaining process is permissible if it served some legitimate state purpose, but we know it doesn't. I have difficulty approving even a slight burden on a federally protected right when the *only* justification is the Commissioner's mistaken understanding of federal preemption law. Federal preemption is our bailiwick, not the Commissioner's, and if he is confused on this score, it's our job to set him straight. Because he offers not the slightest state-law based justification for his policy, I cannot see my way clear to approving it.

### Conclusion

While I agree with the majority that Livadas has a right enforceable in federal court, I cannot join my colleagues in gutting that right and improperly deferring to the Commissioner. I therefore respectfully dissent.

---

**2.** Aside from the effects on individual employees, the Commissioner's policy may have an effect on the collective bargaining process itself. It is not inconceivable that an employer could point to this discrepancy as an argument against an effort to unionize: "Look here, if you vote for the union, the first thing that happens is that the state Labor Commissioner abandons you." In a closely fought election, this type of argument might make a difference.