17 F.3d 1219
 145 L.R.R.M. (BNA) 2791, 62 USLW 2464,
127 Lab.Cas. P 11,045,
1 Wage & Hour Cas. 2d (BNA) 1520
 John McCOLLUM, on behalf of himself and all others similarly
situated, Plaintiffs-Appellants,
v.
Mary ROBERTS, in her official capacity as Labor Commissioner
for the State of Oregon, Defendant-Appellee.
 No. 91-35977.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1993.
Decided March 2, 1994.
 
 David J. Hollander, Gordon S. Gannicott, Hollander, Lebenbaum & Gannicott, Portland, OR, for the plaintiffs-appellants.
 Richard D. Wasserman, Assistant Attorney General, Salem, OR, for the defendant-appellee.
 Appeal from the United States District Court for the District of Oregon.
 Before: TANG, POOLE and RYMER, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Plaintiffs-appellants are private employees who belong to unions and whose employment is covered by collective bargaining agreements. They sued Oregon's Labor Commissioner, Mary Roberts, seeking entitlement to the minimum rest periods Oregon law guarantees to nonunion employees. The district court granted summary judgment for the Commissioner. We now reverse and remand.
 
 I.
 
 2
 Oregon Administrative Rule 839-20-050 provides:
 
 
 3
 (1) Every employer shall provide to each employee ... an appropriate rest period.
 
 
 4
 . . . . .
 
 
 5
 (3) "Appropriate rest period" means: A period of rest of not less than 10 minutes without deduction from the employee's pay for every segment of four hours or major part thereof worked in one work period.
 
 
 6
 Oregon Administrative Rule 839-20-100(1) provides:
 
 
 7
 The provisions of OAR 839-20-050 ... do not apply to employees covered by a collective bargaining agreement.
 
 
 8
 Appellants, a class of union employees whose employment is covered by collective bargaining agreements, brought suit under 42 U.S.C. Sec. 1983.[1] They argued that excluding them from benefits solely on the basis of their union membership interfered with their collective bargaining rights under the National Labor Relations Act. Their complaint sought preliminary and permanent injunctions, and money damages.[2]
 
 
 9
 The defendant Labor Commissioner argued that the plaintiffs lacked standing, and that the regulations did not impinge collective bargaining rights.
 
 
 10
 On cross-motions for summary judgment, the district court held that the NLRA did not preempt the Oregon regulations and it entered summary judgment for the Labor Commissioner. Appellants timely brought this appeal.
 
 II.
 
 11
 The district court had subject matter jurisdiction under 28 U.S.C. Secs. 1331 and 1343. Our jurisdiction comes from 28 U.S.C. Sec. 1291. We review the district court's summary judgment ruling de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992).
 
 III.
 
 12
 Appellants argue that because Oregon's scheme grants nonunion employees benefits not mandated for unionized employees, it penalizes union membership. They argue that while Oregon was not required to mandate paid rest periods, once it did bestow that benefit it could not do so in a discriminatory manner. The Ninth Circuit has recognized that a state's denial to union employees of benefits it grants nonunion employees may infringe on the union employees' rights under the NLRA. Livadas v. Aubry, 987 F.2d 552, 558 (9th Cir.1991), cert. granted, --- U.S. ----, 114 S.Ct. 907, 127 L.Ed.2d 97 (1994); id. at 560-63 (Kozinski, J., dissenting).
 
 
 13
 The question we must answer is whether that kind of infringement occurred here. Certain established preemption principles are helpful in this regard. First, a state may establish statewide minimum labor standards, even though the standards would have the effect of dictating some terms of collective bargaining agreements. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 758, 105 S.Ct. 2380, 2399, 85 L.Ed.2d 728 (1985).[3] States enjoy this prerogative "so long as the purpose of the state legislation is not incompatible with [the] general goals of the NLRA." Id. at 754-55, 105 S.Ct. at 2396-97; accord Bechtel Constr., Inc. v. United Bd. of Carpenters & Joiners, 812 F.2d 1220, 1222 (9th Cir.1987) ("state attempts to establish minimum labor requirements are not preempted by federal labor law if those minimum requirements are not inimical to the purposes of the National Labor Relations Act").
 
 
 14
 In Metropolitan, the Supreme Court upheld a Massachusetts law requiring general health insurance policies to include mental health coverage. The Court noted that the primary purpose of the NLRA was to "restor[e] equality of bargaining power" between corporate employers and their employees. 471 U.S. at 753-54, 105 S.Ct. at 2396-97 (quotations omitted). It said that "[m]inimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." 471 U.S. at 755, 105 S.Ct. at 2397.
 
 
 15
 Here, the problem is that Oregon's benefits provisions apply only to nonunion workers. Ironically, the reason for this disparity is presumably Oregon's desire to avoid preemption difficulties. In exempting union employees, Oregon evidently meant to defer to federal labor law by avoiding any interference with the collective bargaining process. Yet it is precisely the state's sidestepping of the collective bargaining process which is the basis of the appellants' present claim.
 
 
 16
 In this respect this case is similar to Livadas v. Aubry, in which the State of California also sought to avoid preemption problems by shielding unionized workers from employee benefits. Under the state law there, employees who had valid employment claims but who could not afford a lawyer were provided the services of a state lawyer. 987 F.2d at 554. That benefit was not available, however, to employees with claims " 'concerning the interpretation or application of any collective bargaining agreement containing an arbitration clause.' " Id. (quoting Cal.Lab.Code Sec. 229).
 
 
 17
 This provision, like the Oregon regulations in the present case, was intended to avoid preemption difficulties, by shielding union members' labor disputes from state interference. But the statute meant that the Livadas plaintiff, a union employee with a valid grievance against her employer, was denied state help in prosecuting her claim. 987 F.2d at 554-55.
 
 
 18
 The Livadas panel upheld the California statute on grounds not relevant to this appeal. (It held that there was a dispositive state law question requiring the case to be decided in state, not federal, court.) But the case recognized an important principle: if extending a state benefit to union employees would create preemption difficulties, then excluding such employees, even if it works a disparate hardship on them--i.e., "discriminates" against them--is not only permissible under preemption law, it is required by it. See 987 F.2d at 557-58 (majority); id. at 562-63 (dissent).
 
 
 19
 This is as it must be; the alternative would be for a state to extend benefits to union workers only to have the courts strike them down as preempted by federal law. But because of this principle, federal preemption law is, in a sense, pitted against itself. On the one hand, preemption principles compel a state to steer clear of regulation of unions, lest important NLRA rights be trampled. On the other hand, if a state steers clear of unions while handing out benefits, then it opens itself up to charges of anti-union discrimination, also a prohibited activity under the NLRA.
 
 
 20
 What all this means in the present case is that if applying Oregon's rest period regulations to union employees would interfere with the employees' NLRA rights, then the fact that they are not applied to those employees cannot be unlawful discrimination. In other words, we have to ask whether Oregon could have given rest period benefits to all Oregon employees, without running afoul of preemption principles. If preemption principles would prohibit Oregon from conferring benefits on union workers, then the state's exclusion of those workers was not only permitted, it was required.
 
 
 21
 We conclude that Oregon could have provided rest period benefits to all Oregon employees. Metropolitan approved a state's imposition of statewide minimum labor standards, as long as "the purpose of the state legislation is not incompatible with [the] general goals of the NLRA." 471 U.S. at 754-55, 105 S.Ct. at 2396-97. To be sure, the rest periods involved in this case are precisely the sort of benefit one would expect unions and employers to bargain over in collective bargaining sessions. In fact, some of the appellants' collective bargaining agreements contain just such provisions. But that is not dispositive. "[T]he mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for 'there is nothing in the NLRA ... which expressly forecloses all state regulatory power with respect to those issues ... that may be the subject of collective bargaining.' " Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21-22, 107 S.Ct. 2211, 2222-23, 96 L.Ed.2d 1 (1987) (quoting Malone v. White Motor Corp., 435 U.S. 497, 504-05, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978)).
 
 
 22
 We think the minimum rest periods in this case, like the minimum health care benefits in Metropolitan, are not incompatible with the general goals of the NLRA. We hold therefore that the uneven treatment in Oregon's regulations was not compelled by federal preemption law.
 
 
 23
 This conclusion does not necessarily dispose of the issue. That Oregon was not required to exempt union employees from benefits does not ineluctably mean that Oregon's voluntary choice to do so was unlawful. If Oregon's exclusion of unionized employees serves some other legitimate state function, then an argument can be made that its regulations could be justified. Cf. Livadas, 987 F.2d at 563 (Kozinski, J., dissenting).
 
 
 24
 But we need not resolve the question of when, if ever, a state's exclusion of benefits to union employees (other than an exclusion required by preemption principles) serves a legitimate function. Here, the state has proffered no reason for the exclusion. And if Oregon has no legitimate reason for denying benefits to union workers--other than an (incorrect) assumption that federal preemption principles require it--then the state has impermissibly burdened the exercise of rights protected by the NLRA. Cf. id.
 
 
 25
 The Commissioner's sole argument in support of the state's regulations is that the Supreme Court approved a state's unequal treatment of union employees in Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). But we read that decision differently.
 
 
 26
 At issue in Fort Halifax was a Maine statute requiring employers that closed down factories to provide employees with severance pay equal to one week's pay for each year the employee worked at the plant. Id. at 5, 107 S.Ct. at 2214. The statute was inapplicable, however, to employees with an employment contract already containing a severance pay provision. Id. The Court held that this scheme was a legitimate minimum labor standard under Metropolitan that did not unduly interfere with the collective bargaining process. Fort Halifax, 482 U.S. at 19-23, 107 S.Ct. at 2221-24.
 
 
 27
 The Commissioner urges that the severance pay statute in Fort Halifax, like the rest period regulations here, gave benefits to nonunion employees that were denied union employees. But this is incorrect. The severance benefits in Fort Halifax were available to union and nonunion employees alike, as long as they either did not have an employment contract, or had one that did not deal with severance. Conversely, if an employee did have a contract with a severance provision, then statutory benefits were unavailable, whether or not the employee belonged to a union.
 
 
 28
 The Supreme Court thus considered the statute in Fort Halifax to be like the health care law it approved in Metropolitan: a minimum labor standard applicable to union and nonunion members alike.[4] In the present case, by contrast, mandated rest periods are expressly disallowed to all employees with collective bargaining agreements. While in Fort Halifax union and nonunion employees alike were assured severance benefits, only nonunion employees are guaranteed paid rest periods under the Oregon law. Accordingly, we reject the Commissioner's argument that Fort Halifax legitimizes Oregon's discriminatory application of its regulation.
 
 
 29
 Finally, we note that today's decision is in accord with Babler Bros., Inc. v. Roberts, 995 F.2d 911 (9th Cir.1993). There, we upheld against a preemption challenge an Oregon statute mandating overtime pay only for nonunion employees. Critical to our decision in that case was the statute's applicability only to employees who worked on state and local government construction projects. Because the state had a proprietary interest in enforcing working conditions on its own construction projects, we held that it was permitted to discriminate among union and nonunion employees and employers. Babler Bros., 995 F.2d at 916. We relied for this result on the recent decision in Building & Constr. Trades Council v. Associated Builders & Contractors, Inc., --- U.S. ----, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993), where the Supreme Court distinguished between "government as regulator and government as proprietor." Id. at ----, 113 S.Ct. at 1196. The Court held that "a State may act without offending the pre-emption principles of the NLRA when it acts as a proprietor and its acts therefore are not tantamount to regulation, or policy-making." Id. at ----, 113 S.Ct. at 1197 (quotations omitted). Here, however, the Oregon regulations apply to private and public workers alike, advancing not a proprietary but a regulatory purpose. Babler Bros. thus addressed a different issue than the one before us today.
 
 
 30
 Because Oregon's regulatory scheme discriminates against union workers and burdens the collective bargaining process without legitimate purpose, we hold that it is inconsistent with and therefore is preempted by the NLRA. The judgment of the district court is REVERSED. The case is remanded for entry of summary judgment for appellants, and issuance of an appropriate injunction.[5]
 
 
 
 [1]
 An action under Section 1983 is an appropriate vehicle for remedying infringement of rights guaranteed by the NLRA. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 104-113, 110 S.Ct. 444, 447-452, 107 L.Ed.2d 420 (1989)
 
 
 [2]
 The district court ruled that the Eleventh Amendment prohibited appellants' money damages claims. It ruled that it had jurisdiction only to issue prospective injunctive and declaratory relief. The parties do not challenge this ruling
 
 
 [3]
 The Metropolitan case involved so-called Machinists preemption, the same kind of preemption the parties agree is at issue here. See Metropolitan, 471 U.S. at 747-51, 105 S.Ct. at 2393-95
 
 
 [4]
 The Court noted that Maine's high court, from which the appeal came, had "found that the Maine statute applies equally to union and nonunion employees." Fort Halifax, 482 U.S. at 6, 107 S.Ct. at 2215. Nothing the Supreme Court said in affirming the Maine court's decision indicated any disagreement with this view
 Only once did the Court even mention the possibility of the statute applying unevenly, and that was to reject an argument that the law's effects would fall more harshly on nonunion employees, whose employers could more easily declare skimpy severance benefits in order to exempt themselves from paying the more hefty statutory ones. See Fort Halifax, 482 U.S. at 22 n. 15, 107 S.Ct. at 2223 n. 15. In rejecting this argument, the Court observed that if nonunion employers had an easier time evading the severance statute, that result "flow[ed] not from the statute, but from the basic fact that a nonunion employer is freer to set employment terms than is a unionized employer." Id. The Court thus dismissed the notion that union and nonunion employees were treated differently under the law.
 
 
 [5]
 Because, as the Commissioner concedes, at least some of the appellants had standing, we need not review the district court's decision that others of them did not have standing. The district court has already ruled out money damages or other relief that might vary from plaintiff to plaintiff, so it is unnecessary to determine which appellants did, and which did not, have standing